UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

MICHAEL LEON DRIGGERS,    )
    Plaintiff,    )
        )
vs.    )    1:12-CV-00272-LSC
        )
MICHAEL J. ASTRUE,    )
Commissioner of Social Security,    )
    Defendant.    )

MEMORANDUM OF OPINION

I.    Introduction

The plaintiff, Michael Leon Driggers, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB"). Mr. Driggers timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Driggers was forty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education and has completed some college classes. (Tr. at 22.) His past work experiences include employment as a foundry laborer, forklift operator, poultry laborer, stock clerk, and mechanic helper. (*Id.*) Mr. Driggers claims that he became disabled on September 14, 2009, due to hypotension-related syncope/dysautonomia and gout. (Tr. at 18, 22.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id*. If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made

and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Driggers meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 20.) He further determined that Mr. Driggers has not engaged in substantial gainful activity since the alleged onset of his disability.[1] (*Id.*) According to the ALJ, Plaintiff's gout and hypotension-related syncope/dysautonomia are considered "severe" based on the requirements set forth

---

[1] Mr. Driggers testified that he had been working at Papa Johns Pizza as a baker and driver since November 2010, about 3 to 5 hours a day, 4 to 5 days a week. (Tr. at 40-42.) Although this work activity occurred after the alleged onset date, the ALJ found that the part-time work did not consistently rise to the level of substantial gainful activity on a month-to-month basis. (Tr. at 20.)

in the regulations. (Tr. at 20-21.) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (Tr. at 21.) The ALJ did not find Mr. Driggers's allegations to be totally credible, and he determined that he retained the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) with the following additional limitations:

> [H]e can occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds. He can stand and/or walk for about 6 hours in an 8-hour workday. He can sit for about 6 hours in an 8-hour workday. He has unlimited ability to push and pull including operation of hand and/or foot controls. He can frequently climb ramps/stairs but never climb ladders, ropes or scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He has no manipulative, visual, or communicative limitations. He should avoid concentrated exposure to extreme cold and extreme heat. He has unlimited exposure to wetness, humidity, noise, vibration, and fumes, odors, dusts, gases, or poor ventilation. He should avoid all exposure to hazardous machinery and unprotected heights.

(Tr. at 21, 25.)

According to the ALJ, Mr. Driggers is unable to perform any of his past relevant work, he is a "younger individual," as that term is defined by the regulations, and he has at least a high school education and is able to communicate in English. (Tr. at 28-29.) He determined that "transferability of job skills is not material to the

determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (Tr. at 29.) However, the ALJ determined that, considering Plaintiff's age, education, RFC, and work experience, and based on the testimony of a Vocational Expert ("VE"), there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as grocery bagger, janitor, and hand packager. (Tr. at 29.) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." (Tr. at 30.)

II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts,

weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion

Mr. Driggers alleges that the ALJ's decision should be reversed and remanded for two reasons. First, he contends that the ALJ's RFC finding was not based on substantial evidence because it was based on the opinion of Jackie Barrow, a non-

medical source, and because it was not based on the opinion of Dr. Keith Langford, a non-examining state agency medical consultant, even though the ALJ gave substantial weight to Dr. Langford's opinion. Second, he believes that when the ALJ posed the hypothetical question to the VE to determine whether there existed jobs in the national economy that Plaintiff could perform, the ALJ did not include all of the limitations he outlined in his assessment of Plaintiff's RFC.

    A.    Whether Substantial Evidence Supports the ALJ's RFC Finding

Plaintiff contends that the ALJ improperly based his RFC finding on the assessment of Ms. Barrow, a single decision maker and non-medical source. Plaintiff also asserts that although the ALJ stated that he gave substantial weight to the opinion of Dr. Langford, a non-examining state agency medical consultant, the ALJ's RFC finding is not based on Dr. Langford's medical source statement.

A claimant's RFC is the most a claimant can still do, despite his or her physical and mental limitations. 20 C.F.R. § 404.1545(a). An RFC is an administrative assessment, and, ultimately, it is the Commissioner's responsibility to determine it. 20 C.F.R. §§ 404.1512, 416.912. While the ALJ will consider evidence and opinions from physicians and state agency medical and psychological consultants, the RFC finding is reserved for the ALJ alone. *See generally* 20 C.F.R. §§ 404.1527(e)(2),

416.927 (e)(2). In this case, although the ALJ's RFC determination is consistent with the opinion of Ms. Barrow, a single decision maker and non-medical source,[2] the decision, when read as a whole, reflects that the RFC determination was based on Dr. Langford's opinion and the other medical evidence of record.

    Dr. Langford opined that Plaintiff could perform work at the medium exertional level with seizure precautions. (Tr. at 364.) The ALJ's RFC finding limited Plaintiff to medium work with frequent balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; no climbing of ladders, ropes and scaffolds; no concentrated exposure to extreme heat and extreme cold; and no exposure to hazardous machinery and unprotected heights. (Tr. at 21.) Plaintiff contends that the RFC is not supported by substantial evidence because, with the exception of the limitation on exposure to hazardous machinery and unprotected heights, the limitations stated in the RFC are not seizure precautions, as opined by Dr. Langford. As an initial matter, because having seizures exposes one to a greater risk of falling, postural limitations and limitations on climbing are equivalent to seizure precautions. Additionally, it was not improper for the ALJ to also include in the RFC the limitation

---

[2] The Commissioner has been conducting a test in several states, including Alabama, involving the use of a single decision maker who may make the initial disability determination with assistance from medical or psychological consultants, where appropriate. *See* 20 C.F.R. § 494.906(a), (b)(2).

on exposure to extreme temperatures, because that limitation is related to Plaintiff's hypotension/dysautonomia, as his fainting spells often were triggered by extreme temperatures. Indeed, the ALJ's decision to give Dr. Langford's opinion substantial weight does not preclude the ALJ from including additional limitations in the RFC. This is because a physician's medical source statement is different from an ALJ's assessment of a claimant's RFC, as follows:

> A medical source statement is evidence that is submitted to [the Commissioner] by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairments.

S.S.R. 96-5p. Further, the ALJ's RFC finding need not be identical to a medical source statement from a physician, only supported by substantial evidence. Indeed, a requirement that an ALJ's RFC finding must be based on a physician's medical source statement would confer upon the physician the authority to determine the RFC, which would abdicate the Commissioner's statutory responsibility to determine whether an individual is disabled. *See* S.S.R. 96-5p; *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("[T]he task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors."). As such, the ALJ's RFC

9

finding is consistent with his decision to give Dr. Langford's opinion substantial weight.

      The ALJ's RFC finding is also supported by substantial evidence in the record as a whole. On September 21, 2009, Dr. Charles Felgner treated Plaintiff for complaints of gout in his toe and finger. (Tr. at 309.) During the examination, Plaintiff became unresponsive and did not have blood pressure. (*Id.*) Plaintiff was transferred to a hospital, diagnosed with near syncope vasovagal episode, treated, and discharged the same day in improved condition. (Tr. at 272-73.) Plaintiff followed up with Dr. Felgner on September 25, 2009, indicating that he had no additional episodes of near syncope. (Tr. at 307.) On examination, Plaintiff had full range of motion of all joints, no swelling or tenderness, and regular heart rhythm. (Tr. at 308.) Plaintiff then saw Dr. Stephanie Hightower on October 2, 2009, reported another fainting spell, was diagnosed with possible dysautonomia. (Tr. at 353.) In a progress note dated January 15, 2010, Plaintiff reported no fainting episodes and stable blood pressure. (Tr. at 352.) On October 27, 2009, Plaintiff saw Dr. Steven Jones, a cardiologist, because of his prior episode of syncope. (Tr. at 316.) Plaintiff reported that an episode of syncope he suffered after mowing his lawn resolved with rest, and he never lost consciousness. (Tr. at 316.) He had no exertional chest pain and no

shortness of breath. (*Id.*) Dr. Jones diagnosed Plaintiff with syncope and suspect dysautonomia. (Tr. at 317.) On June 2, 2010, Dr. W. Ross Davis performed a tilt table test on Plaintiff that caused a syncopal episode. (Tr. at 368-70.) Dr. Davis recommended salt tablets, exercise, compression garments, and medication. (Tr. at 367.) In November 2010, Plaintiff reported to Dr. Davis that his last syncopal episode occurred in August, and on examination he was in no acute distress, had a normal heart rate and regular rhythm, and no edema in his extremeties. (Tr. at 384.) In February and April 2011, Plaintiff complained of gout attacks, and each time was prescribed preventative gout medication. (Tr. at 380, 386.)

Plaintiff's own statements further support the ALJ's RFC finding. He testified that as long as he takes his medication and stays out of the heat for prolonged periods of time, he can prevent his fainting spells. (Tr. at 48-49, 51.) He has gout flare ups less than once a month. (Tr. 50, 58.) Additionally, Plaintiff has worked part-time as a pizza baker and delivery driver since November 2010. (Tr. 40-41.) The consistency of this work is not consistent with Plaintiff's allegations of daily debilitating symptoms. Plaintiff admits that he can do household chores such as cooking, laundry, sweeping, vacuuming, and washing dishes as long as he avoids getting too hot. (Tr. at 53, 243.)

In sum, the medical records and Plaintiff's own testimony establish that Plaintiff suffers from hypotensive syncope/dysautonomia, which the ALJ accounted for with the postural limitations and limitations on climbing. Further, the records support that despite a diagnosis of gout, Plaintiff can perform medium work with postural limitations, as the gout attacks were sporadic and controlled with medication. Substantial evidence supports the ALJ's RFC finding in this case.

B.   Hypothetical Question Posed to Vocational Expert

Plaintiff also contends that the hypothetical question the ALJ posed to the VE was inconsistent with the ALJ's RFC finding because the ALJ only asked the VE to consider an RFC for medium work with seizure precautions. (Doc. 7 at 8-10.) In other words, Plaintiff asserts that the hypothetical question posed to the VE did not mention Plaintiff's limitations on exposure to extreme cold or extreme heat or an assessment of the impact of the limitation on frequently climbing ramps and stairs, never climbing ladders, ropes or scaffolds, and frequent balancing, stooping, kneeling crouching or crawling. Plaintiff believes his case should be remanded for the taking of VE testimony that is based on a comprehensive RFC finding as found by the ALJ.

In cases where the claimant is unable to perform his past relevant work, the ALJ should determine whether, in light of the claimant's RFC, age, education, and past

work experience, he can perform other work. *Wilson v. Barnhart*, 284 F. 3d 1219, 1227 (11th Cir. 2002) (*citing Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)). In order to determine whether Plaintiff could perform other work at step five of the evaluation, the ALJ properly consulted a VE. (Tr. at 73-76.) *See* 20 C.F.R. §§ 404.1560, 404.960. A VE may offer relevant evidence concerning the physical and mental demands of a claimant's past relevant work and offer expert opinion testimony in response to a hypothetical question about whether a person of the claimant's age, education, work experience, and medical impairments can perform such work. *Id.* In order for a VE's testimony to constitute substantial evidence, the hypothetical question posed by the ALJ must comprise all of the claimant's impairments. *Wilson v. Barnhart*, 284 F.2d 1219, 1227 (11th Cir. 2002). Any other work that a claimant is capable of performing must exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1560, 404.960; *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987). The plaintiff carries the burden of showing that she is unable to perform the jobs identified by the ALJ. *See Williams v. Barnhart*, 140 F. App'x 932, 937 (11th Cir. 2005).

    Contrary to Plaintiff's argument, the ALJ did not ask the VE only to consider an RFC for medium work with seizure precautions. Rather, an examination of the

hearing transcript reveals that the ALJ directed the VE to documents in the administrative record to define what the ALJ meant by seizure precautions. (Tr. at 62-63.) The documents the ALJ directed the VE to consider contain the limitations of frequent balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; no climbing of ladders, ropes and scaffolds; no concentrated exposure to extreme cold and extreme heat; and no exposure to hazardous machinery and unprotected heights. (Tr. at 72-75.) These limitations are consistent with the ALJ's RFC finding. (*Compare* tr. at 72-75 with 21.) Considering these limitations, the VE testified that a person with Plaintiff's age, education and work experience could perform the jobs of grocery bagger, janitor, and hand packager. (Tr. at 64.) As such, the hypothetical question that the ALJ posed to the VE about work opportunities comprised all of the Plaintiff's impairments.

Even if the hypothetical question had in some way differed from the ALJ's RFC finding, Plaintiff has not argued that he could not perform the jobs identified by the VE. *See Williams,* 140 F. App'x at 937. According to the Dictionary of Occupational Titles ("DOT"), each of the jobs identified by the VE involve no more than frequent balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; no climbing of ladders, ropes and scaffolds; no concentrated exposure to extreme heat

and extreme cold; and no exposure to hazardous machinery and unprotected heights. *See* DOT (4th ed. 1991) § 920.687-014 (grocery bagger), § 381.687-018 (janitor); § 920.587-018 (hand packager). In sum, because the RFC was consistent with the hypothetical question, the VE's testimony provided substantial evidence to support the ALJ's finding that Plaintiff could perform other work available in the national economy.[3]

IV. Conclusion

Upon review of the administrative record, and considering all of Mr. Driggers's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 20th day of September 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
160704

---

[3] In the third argument section of Plaintiff's brief, he quotes the statement of Dr. W. Ross Davis, one of his treating physicians, that "[m]eaningful employment is no longer a possibility" for Plaintiff. (Tr. at 367.) To the extent Plaintiff is suggesting that the ALJ did not give sufficient weight to Dr. Davis's opinion, a passing remark without argument is insufficient to constitute a challenge to the ALJ's rejection of the opinion. *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."). Plaintiff's third argument section also contains a mere summary of the medical evidence regarding Plaintiff's hypotension and dysautonomia, with no argument nor citation to authority. For the same reason, the Court need not address these statements.